UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY HAMM, | ) | CASE NO. 1:15CV273 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| CALVIN D. WILLIAMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #19) of Defendants, City of Cleveland and Calvin D. Williams, for Summary Judgment and upon the Motion (ECF DKT #20) of Plaintiff, Johnny Hamm, for Summary Judgment on the Issue of Liability on Counts One and Two and for All Relief on Counts Three and Four. For the following reasons, both Motions are granted in part and denied in part.

**I. FACTUAL BACKGROUND**

On November 29, 2012, more than one hundred Cleveland police officers were involved in a high-speed pursuit of a suspect vehicle through the streets of Cleveland and East Cleveland. The chase came to an end when the officers fired upon and killed the two

unarmed occupants of the vehicle.  The Ohio Bureau of Criminal Investigation issued a report on February 5, 2013, finding the events of that night revealed a systemic failure of the Cleveland Police Department.  On May 30, 2014, the Cuyahoga County Prosecutor announced that a grand jury had indicted one officer on two counts of Manslaughter and five other officers on Misdemeanor charges.  The indictments were highly publicized in local and national media.

Plaintiff is a Sergeant and Officer-in-Charge (OIC) of the Policy Unit in the Cleveland Police Department.  On June 1, 2014, while off-duty and using his home computer, Plaintiff commented on the indictments, discussed the surrounding circumstances and expressed support for his fellow officers on the social media website, Facebook.  (Complaint, ECF DKT 1, ¶ 12).  Plaintiff's Facebook profile picture was a police emblem.  A week later, also while on his own time and on his personal computer, Plaintiff posted additional comments on Facebook related to his original post, and noted that an unidentified individual was upset by his comments and reported the post to Plaintiff's supervisors.

Defendant Williams, Cleveland's Chief of Police, instructed the Inspection Unit to investigate Plaintiff's Facebook posts and determine whether he violated any departmental policies.  The Bureau's investigation concluded that Plaintiff's initial June 1, 2014 post did not violate any policies.  (ECF DKT 20 at 20-5).  However, Plaintiff's June 8, 2014 post violated Division policies.  (*Id.*).  Ultimately, Plaintiff was charged with violating nearly thirty provisions of the rules and regulations governing the Cleveland Police Department, as well as the City's Civil Service rules.  Among these provisions, Plaintiff was found in violation of General Police Order ("G.P.O.") 1.3.39, as well as Rule 5.01 and Rule 5.02 from

-2-

the Manual of Rules and Regulations for the Conduct and Discipline of Officers and Employees.

>G.P.O. 1.3.39 provides in relevant part:
>
>I.. When not necessitated by a legitimate law enforcement activity or function, members who use social media or other internet-based function shall not post, transmit, or otherwise disseminate information that:
>A.  Contains any text, photograph, audio, video, or any other multimedia file of:
>
>\* \* \* \* \*
>
>> 2. Information related to any past or current civil or criminal investigation conducted by or involving the Division, including allegations of misconduct.
>
>\* \* \* \* \*
>
>B. Impairs working relationships within the Division for which loyalty and confidentiality are important, or impairs discipline or harmony among coworkers.
>
>\* \* \* \* \*
>
>H. Would reasonably tend to diminish the esteem of the Division of Police or its personnel in the eyes of the public.

(ECF DKT 20 at 20-11).

>Rule 5.01 provides:
>
>Personnel shall not engage in any conduct, speech or acts while on duty, or off duty, which would reasonably tend to diminish the esteem of the Division of Police or its personnel in the eyes of the public.

(ECF DKT 20 at 20-11).

>Rule 5.02 provides:
>
>Personnel shall not engage publicly in any disparaging conversation detrimental to the Division of Police or its personnel, or representing policy as being other than as stated in the rules, General Policy Orders, Divisional notices, and memorandums.

(ECF DKT 20 at 20-11).

Following a hearing on September 15, 2014, Plaintiff was found guilty of all the

charges against him and was suspended for ten days without pay. Defendant Williams initiated the investigation, determined the charges Plaintiff would face, presided over Plaintiff's disciplinary hearing, and disclosed midway through the hearing that he was the complaining witness against Plaintiff. (Complaint, ECF DKT 1).

On December 11, 2014, a Cleveland Police Commander requested that Plaintiff serve as Acting Commander of the Bureau of Support Services while the Commander was on vacation. The request was approved through the normal chain of command, but Deputy Chief Joellen O'Neill rescinded that approval.

## II. PROCEDURAL BACKGROUND

On February 11, 2015, Plaintiff brought suit under 42 U.S.C. §1983. Plaintiff alleges in Count One of the Complaint that Defendants retaliated against him for engaging in constitutionally protected expression in violation of his rights secured by the First and Fourteenth Amendments of the United States Constitution and Art. I, §11 of the Ohio Constitution, by suspending him for ten days without pay and by rescinding approval for Plaintiff to serve as Acting Commander. Plaintiff alleges in Count Two that Defendants violated his Due Process rights, secured by the Fourteenth Amendment to the United States Constitution and Art. I, §16 of the Ohio Constitution, by denying him a meaningful pre-deprivation hearing. Count Three seeks a declaratory judgment that the policies underlying the disciplinary charges lodged against Plaintiff are unconstitutionally overbroad and vague. In Count Four, Plaintiff alleges that the City's policies caused him irreparable harm, entitling him to permanent injunctive relief.

Defendants filed a Motion to Dismiss Plaintiff's Complaint on April 1, 2015. (ECF

DKT 9).  The Motion was granted in part and denied in part.  The Motion was granted as to the official capacity claims against Defendant Williams and as to the claims under Art. I, § 11 and § 16 of the Ohio Constitution.  The Motion was denied as to all the remaining claims in Plaintiff's Complaint.  (ECF DKT 14).

Plaintiff moves for summary judgment on the issue of liability only on Counts One and Two, and for summary judgment for all relief to which he is entitled on Counts Three and Four.  Defendants move for summary judgment in their favor on the entirety of Plaintiff's Complaint.

### III. LAW AND ANALYSIS

**Standard of Review**

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *See* Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**<u>Count One - First Amendment Retaliation</u>**

Plaintiff alleges that Defendants retaliated against him for engaging in constitutionally protected expression.  In determining whether a public employee's speech is protected under the First Amendment, the Court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Bd. of Ed. of Twp. High Sch. Dist.*, 391 U.S. 563, 568 (1968).

To determine whether an employee has established a First Amendment retaliation claim, the courts utilize a burden-shifting analysis. *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014). "To establish a prima facie case, the employee must demonstrate that: (1) he was engaged in constitutionally protected speech or conduct; (2) he was subjected to an adverse employment action that would deter a person of ordinary firmness from continuing to engage in that speech or conduct; and (3) the protected speech was a substantial or motivating factor for the adverse employment action." *Stinebaugh v. City of Wapakoneta*, 630 F.App'x 522, 525 (6th Cir. 2015), quoting *Benison,* 765 F.3d at 658.

Whether an employee engaged in constitutionally protected speech is a question of law. *Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004). The court must decide first whether the employee spoke as a "citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). If so, the court then must "balance the employee's free speech interest against the employer's justifications for restricting the employee's speech." *Stinebaugh*, 630 F.App'x at 526; *Garcetti, id.* The First Amendment will protect the public employee only if he was speaking as a citizen and not in his official capacity as a government worker. *Garcetti*. The Supreme Court has held that public employees should be able to speak out freely on questions of public concern without fear of retaliation. *Pickering*, 391 U.S. at 571-72. However, the public employer is not required to "tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships." *Connick v. Myers*, 461 U.S.138, 154 (1983).

**Speaking as a "Citizen"**

"[W]hen public employees make statements pursuant to their official duties, the

employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. "But where the speech ordinarily does not fall within the scope of the public employee's duties, he speaks in his role 'as a citizen even if his speech involves the subject matter of his employment.'" *Stinebaugh*, 630 F.App'x at 526; *Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015).

Here, Plaintiff communicated through Facebook while he was off-duty and using his home computer. The Court considers "the impetus for h[is] speech, the setting of h[is] speech, the speech's audience, and its general subject matter." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 546 (6th Cir. 2007). Although his profile displayed a police emblem, and although he commented on a City of Cleveland police chase and its aftermath, the Court finds that Plaintiff spoke as a citizen and not in the scope of his official duties.

## On a Matter of Public Concern

"Speech which can be 'fairly considered as relating to any matter of political, social, or other concern to the community' touches upon matters of public concern." *Bonnell v. Lorenzo*, 241 F.3d 800, 812 (6th Cir. 2001); *Connick* 461 U.S. at 146. "A public concern/private interest analysis does not require that a communication be utterly bereft of private observations or even expressions of private interest." *Mosholder v. Barnhardt*, 679 F.3d 443, 450-51 (6th Cir. 2012); *see Bonnell*, 241 F.3d at 812. "The relevant analysis here is whether the communication touches 'upon matters *only* of personal interest...'" *Connick*, 461 U.S. at 147 (emphasis added). "Speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make

-8-

informed decisions about the operation of their government." *Farhat,* 370 F.3d at 590.  The Sixth Circuit has held that speech concerning the "workings" of a fire department and "public safety" easily falls into the category, "comments on matters of public concern." *Mattox v. City of Forest Park*, 183 F.3d 515, 521 (6th Cir. 1999); *see Pickering*, 391 U.S. at 568.  The Supreme Court has added that "public concern is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004).

Sergeant Hamm's Facebook posts discussed the highly- and nationally-publicized police chase of two unarmed suspects on November 29, 2012 and the indictments of Cleveland police officers for their role in the event.  Plaintiff noted: "Open and honest communication is the only way to move forward and progress as a Division, City , and community."  (June 8 post, ECF DKT 19-2).  Indeed, Plaintiff also commented that the victims are the officers and society; that if he were working, he would be in the fray somewhere; that the pursuit was based on approved past practice; and that the officers should have their own attorneys to look out for their individual interests over that of the "blue brotherhood."  (June 1 post, ECF DKT 19-2).

The Court finds that Plaintiff publicized his personal views on a very public matter.  Whatever his motivations, Plaintiff wrote primarily on a matter of public concern.  His speech related to a matter "of political, social, or other concern to the community," *Connick*, 461 U.S. at 146, and was not a "quintessential employee beef."  *See Haynes v. City of Circleville*, 474 F.3d 357 (6th Cir. 2007).

### *Pickering* balancing

Once the determination is made that the employee, Hamm, spoke as a "citizen on a matter of public concern," the Court must then balance his free speech interest against the City of Cleveland's justifications for restricting the speech. *Garcetti*, 547 U.S. at 418. "[I]f an employee's speech substantially involve[s] matters of public concern, an employer may be required to make a particularly strong showing that the employee's speech interfered with workplace functioning before taking action." *Leary v. Daeschner*, 228 F.3d 729, 737-38 (6th Cir. 2000). The Supreme Court directs the Court to consider:

> whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987); *see also Williams v. Kentucky*, 24 F.3d 1526, 1536 (6th Cir. 1994).

The City of Cleveland asserts that a police department has a more significant interest than a typical government employer in regulating the speech activities of its employees. "Because police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in their decisions regarding discipline and personnel regulations than an ordinary government employer." (Defendants' Motion, ECF DKT 19 at 14, citing *Tindle v. Caudell*, 56 F.3d 966, 971 (8th Cir. 1995)). Chief Williams testified that:

> both posts violate our divisional rules and violations [sic] as well as our General Police Orders and I think both of these posts basically have the sergeant as a member of the Cleveland Division of Police answering and stating things publicly about an ongoing criminal investigation and his feelings on what should happen with that investigation and that's in violation of our orders period. (Williams Deposition at 73, ECF DKT 19-4).

Chief Williams explained further that Plaintiff's posts diminished the esteem of the Division in the eyes of the public because people approached him following the posts who

-10-

were upset that a member of the Cleveland Division of Police was so insensitive about current events that they could make such comments. (Williams Deposition at 74, ECF DKT 19-4). The November 29, 2012 police chase and shooting was a unique incident subject to considerable scrutiny. Thus, particularly in this situation, Defendants contend that they are justified in ensuring that officers are not publicly criticizing the investigation or placing a negative stigma upon the criminal justice system or internal police operations. (Defendants' Motion, ECF DKT #19 at 16).

The Court finds that there is no evidence that Hamm's speech actually disrupted the operations of the Cleveland Division of Police. Hamm's Facebook posts did not actually (as opposed to potentially) impair discipline by superiors or harmony among co-workers. See *Devlin v. Kalm*, 630 F.App'x 534, 538 (6th Cir. 2015). There is no evidence that work stoppages occurred as a result of Plaintiff's posts; or that any officers refused to report to work or work with Plaintiff, because of the social media posts; or that any officer declined to fulfill his or her duty as a result of Plaintiff's speech. In the absence of evidence that Hamm's speech meaningfully impacted the efficient operation of the Division of Police, the *Pickering* balancing test tips in Hamm's favor.

**Prima facie case**

Having conducted the required analysis, the Court determines that Plaintiff Hamm was engaged in constitutionally protected speech. Moreover, there is no genuine dispute that Plaintiff was subjected to an adverse employment action when he was suspended for ten days without pay for violation of the social media policy. Lastly, because Plaintiff was charged in part under the Division of Police Social Media Policy, Defendants have not, and cannot,

legitimately argue that Plaintiff's protected speech (Facebook post) was not a substantial or motivating factor for the discipline imposed. Thus, Plaintiff has established a prima facie case of First Amendment retaliation with regard to the suspension imposed by Chief Williams at the September 15, 2014 hearing.

"If the employee establishes a prima facie case, the burden then shifts to the employer to demonstrate by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014), quoting *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294-95 (6th Cir. 2012). In this instance, Defendants have not proffered any evidence, let alone to a preponderance, that they would have taken the same disciplinary action regardless of Hamm's protected conduct. Plaintiff is granted summary judgment, as to liability only, on this portion of his First Amendment Retaliation Claim.

As for the alleged rescinding of the approval for Plaintiff to serve as Acting Commander in December of 2014, the Court holds that there is a genuine issue of fact whether Plaintiff's protected speech was the substantial or motivating factor for the decision countermanding Plaintiff's assignment. Plaintiff has not made out a prima facie case of retaliation; so his Motion for Summary Judgment (liability only) is denied as to this aspect of his First Amendment Retaliation Claim in Count One of his Complaint.

Defendants' Motion for Summary Judgment is denied as to Count One of Plaintiff's Complaint.

**Count Two - Fourteenth Amendment Due Process**

Plaintiff claims that he was deprived of his right to Due Process secured by the

Fourteenth Amendment to the United States Constitution because he was denied a meaningful pre-deprivation hearing.

"The essential requirements of due process are notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 533 (1985); *Farhat*, 370 F.3d at 595. The Sixth Circuit has held that "prior to [discipline] of a public employee who has a property interest in his employment, the due process clause requires that the employee be given 'oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer.'" *Farhat*, 370 F.3d at 595, quoting *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990). Requiring more than notice and an opportunity to respond prior to discipline intrudes "on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546. During the pre-disciplinary stage, "the employee does not have a right to, and the Constitution does not require, a neutral and impartial decisionmaker." *Farhat*, 370 F.3d at 595.

Yet, the employee does have a right at the post-deprivation stage to a neutral decisionmaker in order to adjudicate the evidence. *Id.* "Moreover, grievance procedures in a collective bargaining agreement allowing an employee to challenge discipline in a more detailed post-disciplinary proceeding can satisfy a plaintiff's entitlement to post-deprivation due process." *Farhat*, 370 F.3d at 596; *Buckner*, 901 F.2d at 497. Even if the decisionmaker at the pre-disciplinary hearing is biased, "due process is fulfilled by a post-[disciplinary], trial-type proceeding where an opportunity to 'ferret out bias, pretext, deception and corruption by the employer in discharging the employee' is provided." *Farhat*, 370 F.3d at

596 quoting *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988).  Thus, as long as the public employee has access to a system of post-disciplinary procedures that includes a neutral decisionmaker or arbitration, preceded by a pre-discipline "right of reply" hearing, then the employee has received all the process due under the Constitution.  *Farhat*, 370 F.3d at 596; s*ee Loudermill*, 470 U.S. at 545; *Duchesne*, 849 F.2d at 1006; *Buckner*, 901 F.2d at 494.

In the instant matter, Plaintiff was given written notice and an opportunity to respond.  Specifically, Plaintiff was provided with notice of a pre-disciplinary conference scheduled for September 15, 2014  in a letter dated September 2, 2014.  (ECF DKT 20-6).  The notice included the rules and policies which Plaintiff was charged with violating.  Moreover, Plaintiff himself testified that he was provided the September 2, 2014 document prior to the hearing and that he had an opportunity to read and review it prior to the hearing.  Further, Plaintiff testified that he received and had an opportunity to review the investigative report in the case prior to the pre-disciplinary conference.  (ECF DKT 19-1).  Finally, Plaintiff had the opportunity to complete a six page written response to questions about the Facebook post (ECF DKT 19-1, 19-5).

Plaintiff alleges that Defendant Williams was biased against him.  Defendant Williams initiated the investigation, determined the charges Plaintiff would face, presided over Plaintiff's disciplinary hearing and disclosed midway through the hearing that he was the complaining witness against Plaintiff.  According to Plaintiff, the "gravamen of his claim is that he was denied due process because the result of his pre-disciplinary hearing was predetermined." (Plaintiff's Opposition, ECF DKT 24 at 10).

Chief Williams initiated the investigation by directing members of the Bureau of

Integrity Control to conduct an administrative review of Hamm's postings to his personal Facebook page. Commander Brian Heffernan, Lieutenant Robert Simon and Sergeant Maria Stacho reported to the Chief on both the June 1st and June 8th postings. They did not find fault with the first posting; but they concluded that the second posting impaired harmony in working relationships in the Division and thus, violated G.P.O. 1.3.39 Social Media Policy. Chief Williams considered the investigators' advice but made the final call, finding more violations and imposing the harshest penalty he is authorized to assess. The Court finds that some degree of punishment would have been warranted even if any one of the three recommendations had held sway. Therefore, the Court is not persuaded that the resulting discipline was predetermined.

Even if Defendant Williams were biased against Plaintiff, "[i]t is the post [disciplinary] proceeding where bias and corruption are ferreted out." *Farhat*, 370 F.3d at 597. Plaintiff is a member of the Cleveland Police Patrolmen's Association (CPPA) and is bound by the Collective Bargaining Agreement between the CPPA and the City. The Collective Bargaining Agreement outlines an extensive grievance procedure. (ECF DKT 23-1). CPPA members, such as Plaintiff, are provided the opportunity to grieve discipline and ultimately have the case heard before an arbitrator. (ECF DKT 23-1). Because this more detailed post-disciplinary proceeding is an available option for Plaintiff, he has not been denied due process.

Plaintiff asserts that Section 119 of the Cleveland City Charter denies him due process. Section 119 empowers the Chief of Police with the exclusive right and final decision to suspend an officer for a period that does not exceed ten days. However, Section 119 does

not prevent Plaintiff from filing a grievance through the CPPA.  Moreover, although the Chief's decision to suspend for ten days or less is "final," the term "final" is not the equivalent of non-appealable or non-reviewable.  Moreover, Plaintiff has not grieved his discipline through the CPPA grievance procedure.  Because Plaintiff has a post-disciplinary arbitration process available to him and he failed to take advantage of it, Plaintiff has not been denied due process.  Summary Judgment is granted in favor of Defendants and denied to Plaintiff on Count Two.

**Count Three - Declaratory Judgment of Unconstitutionality**

In Count Three of his Complaint, Plaintiff asks the Court to declare G.P.O. 1.3.39 and Rules 5.01 and 5.02 unconstitutionally vague and overbroad on their face and as applied.

In light of the Court's determination granting Plaintiff summary judgment in part on his claim for First Amendment Retaliation, the Court declines to reach the constitutional challenges to the Division of Police rules, regulations and policies.  The United States Supreme Court has strongly admonished federal courts to refrain from reaching constitutional questions when non-constitutional grounds are dispositive.  *Jean, et al. v. Nelson, et al.*, 472 U.S. 846, 854 (1985).

Therefore, the Court exercises its judicial restraint according to the Supreme Court's directive and denies the parties' Motions for Summary Judgment on Count Three as moot.

**Count Four - Injunctive Relief**

Plaintiff asks the Court to grant him a permanent injunction by reason of Defendants' misconduct and the irreparable harm Plaintiff has suffered.  By this Order, the Court has granted Plaintiff only partial judgment in his favor; and significant fact questions remain for

the jury's consideration.

The Court holds that permanent injunction is not a cause of action, but rather an equitable remedy.  The parties' Motions for Summary Judgment on Count Four are denied. Plaintiff may demonstrate his entitlement to an award of injunctive relief against Defendants should he prevail at trial.

### IV. CONCLUSION

For all these reasons, the Motion (ECF DKT #19) of Defendants, City of Cleveland and Calvin D. Williams, for Summary Judgment and the Motion (ECF DKT #20) of Plaintiff, Johnny Hamm, for Summary Judgment on the Issue of Liability on Counts One and Two and for All Relief on Counts Three and Four are granted in part and denied in part.

**IT IS SO ORDERED.**

                                                      s/ Christopher A. Boyko
                                                    **CHRISTOPHER A. BOYKO**
                                                    **United States District Judge**

**Dated:  September 29, 2016**